**Caleb E. Simpson**
GERSH, SIMPSON & JOOS, PLLP
121 Wisconsin Avenue
Whitefish, Montana 59937
Telephone:  (406) 862-7800
Facsimile:  (406) 862-7820
Email:          simpson@bigskyattorneys.com

**Nathan G. Wagner**
SIEFERT & WAGNER, PLLC
1135 Strand Avenue, Suite A
Missoula, Montana 59801
Telephone:  (406) 226-2552
Facsimile:  (406) 226-2553
Email:          nate@swl.legal, mail@swl.legal

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

| | |
|---|---|
| TRISTAN ASSANCE,<br><br>                    Plaintiff,<br><br>        v.<br><br>LINCOLN COUNTY, BRANDON HOLZER, JAMES KIRK KRAFT, and DOES 1-10.<br><br>                    Defendants. | CV 24-9-M-DWM<br><br><br>**PRELIMINARY PRETRIAL STATEMENT** |

Plaintiff, Tristan Assance, pursuant to this Honorable Court's Orders dated March 15, 2024 (Doc. 8), Rule 26(a)(1), Fed. R. Civ. P., and L.R. 16.2(b)(1), and respectfully file this Preliminary Pretrial Statement.  The Rule 16(b), Fed. R. Civ.

P., Preliminary Pretrial Conference in this case is scheduled for April 30, 2024, at 10:30 a.m. before the Hon. Donald W. Molloy.

## A. Brief Factual Outline of the Case.

This is a civil rights action, arising from Defendants' wrongful actions, brought pursuant to 42 U.S.C. § 1983 and 1988, the United States Constitution, and Montana state law. It seeks damages from the Defendants for excessive use of force, negligence, and violation of policies and procedures.

On January 14, 2021, Lincoln County Sheriff's Office deputies responded to a domestic disturbance call at 165 Fallen Bear Lane, Libby, Montana. Upon arrival they encountered Assance intoxicated and suicidal, while at various times holding a knife and/or a handgun. After a short interaction, the commanding officer instructed Defendant Kraft to use a "less lethal," use of force, meaning to use his Taser to incapacitate Assance. Defendant Kraft deployed his Taser, but failed to announce "Taser, Taser, Taser," as he had been trained to do. Defendant Holzer mistook the sound of Defendant Kraft's Taser deployment as the sound of a firearm, and immediately began firing his AR-15 at Assance. Assance was struck by two of the four rounds fired by Defendant Holzer, once in the right shoulder and once in the right leg. Assance suffered serious and permanent injuries as a result of being struck by the AR-15 rounds.

Assance will show that the Defendants used excessive force in violation of

Assance's constitutional rights, and in violation of 43 U.S.C. § 1983.  Assance will also show that the Defendants are liable under the holding of *Monell v. Department of Social Services*, 436 U.S. 658, 690 (1978).  Assance will also show that the Defendants were negligent. As a result of the Defendants' actions, Assance suffered damages including but not limited to pain and suffering, emotional distress, medical expenses, permanent injuries, loss of established course of life.  Assance will also seek an award of punitive damages and attorney's fees.

**B.    Basis for Federal Jurisdiction and for Venue in the Division.**

Jurisdiction is proper pursuant to 28 U.S.C. § 1331 because Plaintiff asserts claims arising under the Constitution, laws, or treaties of the United States.  This Court has supplemental jurisdiction over the Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, because they are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.  Venue is proper in this Court and this division pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in Lincoln County, Montana.

**C.    Factual Basis of Each Claim Advanced by Plaintiffs.**

Assance alleges violation of his constitutional rights under 42 U.S.C. § 1983 by Defendants Holzer and Kraft.  Assance also asserts that Lincoln County is liable for violations of the customs, policies, and procedures of the County, and that the

County failed to properly screen, train, instruct, monitor, supervise and evaluate Defendants Holzer and Kraft, which ultimately led to their improper actions. Assance further asserts that the Defendants acted negligently.  The factual bases for these claims are more fully set forth in Section A above.

**D.    Legal Theory Underlying Each Claim.**

1.    *Count I – 42 U.S.C. § 1983* (Defendants Kraft and Holzer)

Plaintiff is suing under Section § 1983, a civil rights law passed by Congress that provides a remedy to persons who have been deprived of their federal constitutional and/or statutory rights under color of state law.  "By the plain terms of § 1983, two – and only two – allegations are required in order to state a cause of action under that statute.  First, the plaintiff must allege that some person has deprived him of a federal right.  Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law."  *Gomez v. Toledo*, 446 U.S. 635, 640 (1980).

2.    *Count II – Monell Claim* (Defendant Lincoln County)

In most § 1983 lawsuits, the individual actors who committed the alleged constitutional violations are the named defendants, but in some suits the political subdivision is sued too.  Plaintiffs generally can establish county liability in one (1) of four (4) ways.

First, plaintiffs may point to an officially adopted or promulgated policy.

David Jacks Achtenberg, *Taking History Seriously: Municipal Liability Under 42 U.S.C. § 1983 and the Debate Over Respondeat Superior*, 73 Fordham L. Rev. 2183, 2188 (2005) (citing *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978)).  While rare, some written policies are unconstitutional on their face.  *See, e.g.*, *Maddux v. Officer One*, 90 F. App'x 754 (5th Cir. 2004) (held: municipality could be held liable where the source of police officers' forcible entry into a third-party's premises without a warrant was a written policy authorizing such conduct).  More often policies are unconstitutional as applied.  *See, e.g., Lanier v. City of Woodburn*, 518 F.3d 1147 (9th Cir. 2008) (held: city drug testing policy was unconstitutional as applied to a teenage girl who was applying to be a page at the public library).

Second, plaintiffs may point to a custom or practice that is not written or formally adopted, but that is pervasive, long-standing practice that has the force of law.  *See, e.g., Gregory v. City of Louisville*, 444 F.3d 725 (6th Cir. 2006) (plaintiff alleged a custom of overly suggestive line-ups and show-ups); *Cash v. Hamilton County Dept. of Adult Probation*, 388 F.3d 539 (6th Cir. 2004) (plaintiffs alleged the county had a policy of cleaning up the property of homeless people – collecting it and destroying it).  Importantly, the county having a good paper policy does not necessarily save an entity from liability.  For example, in *Price v. Sery*, 513 F.3d 962 (9th Cir. 2008), even though the deadly force policy was, on its face, perfectly constitutional, the 9th Circuit held that the plaintiff had introduced sufficient

evidence from which a jury could find that the actual practice or custom regarding use of deadly force was to shoot first and ask questions later. *Id.*, at 973-974. *See also Daskalea v. Dist. of Columbia*, 227 F.3d 433 (D.C. Cir. 2000) (city had good paper policy prohibiting guards from having sex with prison inmates; in practice, however, what was going on in the prison was drastically different); *Marriott v. County of Montgomery*, 426 F. Supp. 2d 1 (N.D.N.Y. 2006) (court found a practice of unconstitutional strip searches despite the existence of a facially constitutional paper policy). Plaintiffs need to show the practice or the custom and link it to somebody at the policy-making level. In other words, a municipality is liable when the constitutional injury to the plaintiff resulted from the implementation or "execution of a government's policy or custom, whether made by its lawmakers or by those…said to represent official policy." *Monell*, 436 U.S. at 694.

Third, plaintiffs may pursue the *City of Canton v. Harris*, 489 U.S. 378 (1989), method for establishing a political subdivision's liability. This occurs when plaintiffs point to a failure to: train, supervise, discipline, adequately screen, etc., which causes an underlying constitutional violation to occur. A county may be liable for the underlying constitutional violation committed by a non-policymaking employee if the county's policy is objectively deliberately indifferent to the likelihood a particular constitutional violation would occur. *Id.*, at 388. There are two (2) ways to show objective deliberate indifference. First, plaintiffs may argue

that there was an obvious need to train. *Id.*, at 390. For example, if there is an armed police force with the power to arrest felons, the city should train them on the constitutional limits of the use of deadly force. If not, the first time there is an incident that is unconstitutional, the political subdivision will be liable because there was such an obvious need to train, and therefore it was deliberately indifferent not to do so. *Id.* Second, in other cases, the need to train, supervise, or discipline may not be so obvious. However, if a certain number of events or a pattern of constitutional violations become apparent, the court will hold the county on constructive notice; and if no training, supervision, or discipline is put in place, the county is going to be held liable. *City of Canton*, at 397 (Justice O'Connor dissenting).

The final method for establishing county liability is where plaintiff points to a particular decision or act made by someone who is asserted to be a final policymaker for the entity. *See, e.g., City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988). The United States Supreme Court has held that in certain situations, the decisions or the acts of a final policymaker, even if only on a single occasion, may be attributed to the entity for liability purposes under § 1983. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 484-485(1989) (held: county prosecutor's decision to send deputy sheriffs into a premises to get a witness constituted a county policy even though it occurred only once).

3. *Count III – Negligence* (Defendant Lincoln County)

A negligence action has four (4) elements: duty; breach of duty; causation; and damages. *Meloy v. Speedy Auto Glass, Inc.*, ¶ 15, 342 Mont. 530, 182 P.3d 741 (2008).  Police officer negligence involving the use of a firearm which results in the shooting of a victim is actionable under Montana state law. *See, e.g., Schuster v. Yellowstone County*, 347 P.3d 264 (Mont. 2014).

**E.      Computation of Damages.**

Plaintiff's damages are for wrongful shooting, medical expenses, alteration of a normal course of life, physical and mental pain and suffering, loss of earnings and/or opportunity, cost of suit, punitive damages, and other damages.  Plaintiff places the value of the damages they have suffered in excess of $1 million dollars. Similar police shootings have resulted in settlements and verdicts in the range of $4,000,000 and $10,000,000, as summarized in the table below. Plaintiff reasonably believes that the damages in this case fall within this range:

| Amount | Victim | Location | Incident |
|---|---|---|---|
| $8.00M | Kenneth Ellis | Albuquerque, New Mexico | Veteran with PTSD shot during standoff while holding a gun to his head.  Settled after Jury Verdict of $10.3M |
| $6.50M | Walter Scott | North Charleston, South Carolina | Suspect shot in the back while fleeing after physical altercation with officer.  Filmed by a bystander. |
| $6.40M | Freddie Gray | Baltimore, Maryland | Died in custody during transport while restrained. |

| | | | |
|---|---|---|---|
| $6.00M | Christopher Torres | Albuquerque, New Mexico | Mentally ill man shot in his own yard while police were serving warrant over road rage incident. |
| $5.90M | Eric Garner | New York, New York | Suffocated via choke hold during misdemeanor arrest |
| $5.50M | Kenneth Smith | Cleveland, Ohio | Shot in the head after report of disturbance at night club.  Officer claims he lunged for a gun later found in his vehicle. |
| $5.00M | James Boyd | Albuquerque, NM | Homeless man shot in the back during arrest for camping on state land.  Video showed he was reaching for a knife. |
| $5.00M | Laquan McDonald | Chicago, Illinois | Shot while walking down the road with a knife.  Officers claimed he lunged at them, but video shows he did not. |
| $5.00M | Juan Herrera | Buena Park, California | Shot after fleeing police.  Officer said he was reaching for a weapon, but no weapon was found. |
| $5.00M | Brian Beaird | Los Angeles, California | Disabled Veteran shot after leading police on high-spead chase.  Recorded and broadcast on live TV. |
| $4.80M | Kathryn Johnson | Atlanta, Georgia | Shot during "no-knock" raid based on informant.  She fired on officers when they broke down her door, they killed her. |
| $4.65M | Marvin Booker | Denver, Colorado | Homeless man suffocated during jailhouse booking.  Jury Award for use of deadly force. |
| $4.50M | Rekia Boyd | Boston, Massachusetts | Bystander shot by off duty cop who fired at group of men he thought had fired a weapon. |
| $4.50M | Mendez/Zeferino | Gardena, California | Two unarmed men shot by police as a result of mistaken identity after report of bicycle theft. |

| | | | |
|---|---|---|---|
| $4.20M | Hernandez/ Carranza | Los Angeles, California | Dorner Manhunt—Police shot into their vehicle after mistaking it for Chris Dorner's vehicle. |
| $3.90M | Ramarley Graham | New York, New York | Unarmed man shot in his bathroom during raid. |

Plaintiff also intends to pursue recovery of his costs and attorney fees under both federal and state law.

**F.   Pendency or Disposition of State or Federal Litigation.**

There is no pending litigation related to this case.

**G.   Proposed Additional Stipulations of Fact/Applicable Law.**

Plaintiff does not propose any additional stipulations of fact beyond those included in the Statement of Stipulated Facts filed pursuant to L.R. 16.2(b)(3).

Plaintiff's claims are governed by 42 U.S.C. § 1983, the 4th Amendment to the United States Constitution, §§ 27-1-221, 27-1-501, 27-1-513, M.C.A., *Monell v. Dept. of Soc. Servs*., 436 U.S. 658 (1978), and common law negligence.

**H.   Proposed Deadlines re: Joinder of Parties or Amendment of Pleadings.**

As reflected in the Joint Discovery Plan, the parties propose a deadline of **June 29, 2024**, for motions to amend the Complaint or Answers.  Plaintiff proposes that this deadline also apply to the joinder of parties.

**I.   Controlling Issues of Law Suitable for Pretrial Disposition.**

Plaintiff contends that the question of damages and liability in this case should be bifurcated.   Fed. R. Civ. P. 42(b) permits a court to separate trials into

liability and damage phases, and this Court should do so in this matter, where the risk of prejudice which would result from the introduction of inflammatory evidence. Recognizing, however, that such evidence bears on the amount of damages to be awarded, if any, the separation of issues of liability from those relating to damages is an obvious use for Rule 42(b). Any testimony or evidence having to do with criminal convictions, drug/alcohol use, or mental health issues would have some bearing only on Assance's damages, and accordingly should be reserved until the damages portion of the trial.

The Ninth Circuit has held that failure to bifurcate the liability phase from the compensatory damages phase of the trial in an excessive use of force case under Fed. R. Civ. P. 42(b) was reversible error where the refusal to bifurcate resulted in the admission of inflammatory evidence introduced by the defense which had no relevance to the issue of whether the officer acted lawfully in shooting the decedent. *Hulzar v. City of Anaheim (Estate of Diaz),* 840 F.3d 592 (9th Cir. 2016).

Recognizing that some of the categories of evidence Plaintiff seeks to exclude would in fact be relevant to damages calculations, but not necessarily to the excessive use of force inquiry, bifurcation is necessary, and the failure to bifurcate under these circumstances would be reversible error.

## J.      Individuals with Discoverable Information and Summary.

Tristan Assance
c/o Siefert & Wagner, PLLC

1135 Strand Ave, Suite A
Missoula, Montana 59801

Mr. Assance is the plaintiff and victim of this action and has knowledge regarding the facts of the shooting and the damages he has suffered.

Brandon Holzer
c/o Garlington, Lohn & Robinson, PLLP
350 Ryman Street
Missoula, Montana 59807

Mr. Holzer is a Defendant and has knowledge of the circumstances of the Taser deployment and the shooting, Lincoln County's training materials, and the injury suffered by Assance.

James Kirk Kraft
c/o Christensen & Prezeau, PLLP
24 West 6th Ave, Suite 501
Helena, Montana 59601

Mr. Kraft is a Defendant and has knowledge of the circumstances of the Taser deployment and the shooting, Lincoln County's training materials, and the injury suffered by Assance.

Lincoln County
c/o County Litigation Group
2715 Skyway Drive
Helena, Montana 59604

Lincoln County was, at all times relevant, a political subdivision of the State of Montana. The County was responsible under the laws of agency, negligent and/or improper conduct, acts and/or omissions of the Lincoln County Sheriff's Office

("LCSO") and its officers. The County will have general knowledge regarding the facts pertaining to this action as well as the overall conduct, policies, and structure of the Lincoln County Sheriff's Office.

    Captain Boyd White
    c/o Lincoln County Sheriff's Office

Captain White issued the instruction to use less lethal force in the form of a Taser to Defendant Kraft. White has knowledge of the use of the Taser, the shooting, the injury suffered by Assance, and the LCSO's policies, procedures, and training regarding use of force.

    Detective David Hall
    Detective Dan Holskey
    c/o Lincoln County Sheriff's Office
    418 Mineral Ave.
    Libby, MT 59923

Detectives Hall and Holskey were on scene when the Taser deployment took place and the shooting occurred. They have knowledge of the use of the Taser, the shooting, the injury suffered by Assance, and the LCSO's policies, procedures, and training regarding use of force.

    Kirsten Koenig
    165 Fallen Bear Lane
    Libby MT 59923
    Phone: 406-291-7675

Ms. Koenig was present during the shooting and presumably has knowledge of Assance's mental state, conduct preceding the Taser incident and shooting, and

injuries.

> Chelsea Baird
> 480 Farm to Market Road
> Libby, MT 59923
> Phone: 406-291-8766

Ms. Baird was present during the shooting and presumably has knowledge of Assance's mental state, conduct preceding the Taser incident and shooting, and injuries.

> Libby Volunteer Ambulance
> 307 Montana Av
> Libby, MT 59923
> 406-293-5582

Assance was transported by the Libby Volunteer Ambulance service following the shooting and they have records and knowledge of his transport, injuries, and treatment.

> Cabinet Peaks Medical Center
> 209 Health Park Drive
> Libby, MT 59923
> Phone: 406-283-7000

Assance was transported to Cabinet Peaks Medical Center following the shooting and they have records and knowledge of his transport, injuries, and treatment.

> Logan Health Medical Center
> 310 Sunnyview Lane
> Kalispell, MT 59901
> Phone: 406-752-5111

Assance received treatment for his injuries at Logan Health Medical Center and they have records and knowledge of his transport, injuries, and treatment.

**K.     Insurance Agreements that May Cover Any Resulting Judgment.**

The Plaintiff assumes the County, Deputy Sennett, Deputy Trujillo, and Sheriff Linder are covered by an agreement with the Montana Association of Counties ("MACo").

**L.     Status of Settlement Discussions.**

The parties have not yet engaged in settlement discussions.

**M.     Suitability of Special Procedures.**

Plaintiff is not aware of any special procedures that would be appropriate in this case, with the possible exception of the bifurcation issue addressed above.

DATED this 23rd day of April, 2024.

GERSH, SIMPSON & JOOS, PLLP

By: /s/ Caleb E. Simpson
    Caleb E. Simpson
    Attorney for Plaintiff

DATED this 23rd day of April, 2024.

SIEFERT & WAGNER, PLLC

By: /s/ Nathan G. Wagner
    Nathan G. Wagner
    Attorney for Plaintiff